**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALEXIS ALVARADO; BENJAMIN LEGUE;** | ) | |
| **FRANCISCO LOPEZ; STEVE MCELHENY;** | ) | |
| **GENESIS RIOS; and MADRID ST. ANGELO,** | ) | **Case No.** |
| **individually and each on behalf of all other** | ) | |
| **similarly situated persons, known and unknown,** | ) | |
| | ) | **Judge** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **DADDY COOL'S INC. (d/b/a INNJOY** | ) | **COLLECTIVE ACTION AND** |
| **LOGAN SQUARE); INNJOY DRINK** | ) | **CLASS ACTION COMPLAINT** |
| **AND EAT, INC.; INNJOY EAT & DRINK** | ) | |
| **INC.; GABRIELLE HATHAWAY; RICH** | ) | |
| **KEWITZ; RAE L. HATHAWAY; and** | ) | |
| **JOSEPH HATHAWAY,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

Plaintiffs Alexis Alvarado (hereinafter "Alvarado"), Benjamin Legue (hereinafter "Legue"), Francisco Lopez (hereinafter "Lopez"), Steven McElheny (hereinafter "McElheny"), Genesis Rios (hereinafter "Rios"), and Madrid St. Angelo (hereinafter "St. Angelo") (hereinafter, collectively, "Named Plaintiffs"), each individually and on behalf of other similarly situated persons known and unknown, by and through their undersigned attorneys, now bring this action against the above-named defendants pursuant to 29 U.S.C. § 201 *et seq*., the Fair Labor Standards Act ("FLSA"), 820 ILCS 105/1 *et seq*., the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 115/1 *et seq*., the Illinois Wage Payment and Collection Act ("IWPCA"), and §1-24, *et seq.* of the Municipal Code of Chicago ("Chicago Minimum Wage Ordinance") and Illinois common law to recover unpaid wages and interest thereon, liquidated damages, attorneys' fees and costs, and other damages and in support thereof allege as follows:

1

**Introduction**

1.      This is an individual, collective, and class action brought to redress, *inter alia*, violations by Defendants of federal and state wage and hour laws in connection with their operation of Innjoy, which is a restaurant, bar, and entertainment venue brand based in Chicago, Illinois. Each of the Named Plaintiffs was employed by Defendants as wait staff, bartenders, and/or cooks at one or both of the Innjoy locations.

2.      At all times relevant to this litigation, Defendants willfully implemented payroll practices that were calculated to unlawfully circumvent the minimum wage and overtime provisions of FLSA and IMWL, systematically depriving Plaintiffs of wages to which they were lawfully entitled.

3.      Defendants regularly and as a matter of course have failed to pay their employees, including without limitation Plaintiffs, an hourly rate of pay equal to or in excess of the applicable rate then in effect under federal, state, and local law.

4.      Another unlawful practice related to the designation by Defendants of certain bartending shifts at Innjoy as "tips only" shifts. These "tips only" shifts were typically scheduled to meet added customer demand during Defendants' busiest periods of operation and required Plaintiffs to perform bartending tasks at a "beer tub" station located in the back section of the bar or otherwise in an area separate from the regular bar area.

5.      Hours worked that were attributable to these "tips only" or "beer tub" shifts were never included in Defendants' timekeeping or payroll calculations. The failure to count these hours toward each employee's total was not a mere or sporadic bookkeeping failure, but rather the consistent and deliberate implementation of a company policy. As a consequence of this blatantly violative practice, Defendants deprived Plaintiffs of wages for thousands of hours of work.

2

6.     Further, Defendants failed to pay Plaintiffs one and a half times their regular rate of pay when Plaintiffs worked in excess of forty (40) hours in any workweek.

7.     Defendants' willful and sustained evasion of their obligations to pay employees properly for their overtime were effectuated through a variety of practices including but not limited to the wholesale omission of certain hours (as in the "tips only" shifts described in paragraphs 4-5, *supra*.), and a separate scheme whereby certain Plaintiffs were tasked with some additional managerial responsibilities and subsequently misclassified as salaried employees exempt from the overtime provisions of FLSA and IMWL.

8.     Defendants also engaged in the unlawful practice of failing to properly record and document overtime hours worked by its kitchen personnel.  These overtime hours were paid "off the books" in cash by Defendants in order to circumvent the overtime provisions of FLSA and IMWL.

9.     In addition, Defendants routinely made unlawful deductions to and otherwise unlawfully withheld compensation from Named Plaintiffs' in violation of the IWPCA.

10.     Furthermore, Defendant Joseph Hathaway made one or more *per se* defamatory statements to the detriment and injury of Plaintiff Steven McElheny during and subsequent to Plaintiff McElheny's employment with Defendants.

## Jurisdiction and Venue

11.     This Court has jurisdiction over Plaintiffs' FLSA claims, pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  Each Named Plaintiff has executed a consent form memorializing his or her participation in this action as a party thereto and these forms are appended hereto as Exhibits 1-6.

12.     This Court has supplemental jurisdiction over Plaintiffs' state law and city ordinance claims, pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the facts and events giving rise to Plaintiffs' claims occurred therein.

### Parties

14.     Plaintiff Alexis Alvarado was employed by Defendants as a bartender and server between August 2018 and October 2019, inclusive.

15.     Plaintiff Benjamin Legue was employed by Defendants as a bartender and server between June 2017 and June 2019, inclusive.

16.     Plaintiff Francisco Lopez was employed by Defendants as a cook between December 2016 and September 2019, inclusive.

17.     Plaintiff Steve McElheny was employed by Defendants as a bartender and server between September 2016 and May 2019, inclusive.

18.     Plaintiff Genesis Rios was employed by Defendants as a bartender and server from May 2017 to October 2019, inclusive.

19.     Plaintiff Madrid St. Angelo was employed by Defendants as a bartender between June 2017 and June 2019, inclusive.

20.      All Named Plaintiffs reside in and are domiciled within the Eastern Division of the Northern District of Illinois.

21.     Defendant Daddy Cool's Inc. is an Illinois corporation during business as Innjoy Logan Square, an eating and drinking establishment located at 2200 North Milwaukee Avenue in Chicago, Illinois.

22.     Upon information and belief, Defendant Daddy Cool's Inc. generated annual gross receipts in excess of $500,000 during the last three years preceding the filing of this suit.

23.     At all relevant times, Defendant Daddy Cool's Inc. regularly and customarily transacted business within this judicial district and is an "employer" within the meanings of FLSA, the IMWL, the IWPCA, and the Chicago Minimum Wage Ordinance and is "an enterprise engaged in commerce" within the meaning of FLSA.  29 U.S.C. § 203(s).

24.     Defendant Innjoy Drink and Eat, Inc. is an Illinois corporation doing business as Innjoy, an eating and drinking establishment located at 2051 West Division Street in Chicago, Illinois.

25.     Upon information and belief, Defendant Innjoy Drink and Eat, Inc. generated annual gross receipts in excess of $500,000 during the last three years preceding the filing of this suit.

26.     At all relevant times, Defendant Innjoy Drink and Eat, Inc. regularly and customarily transacted business within this judicial district and is an "employer" within the meanings of FLSA, the IMWL, the IWPCA, and the Chicago Minimum Wage Ordinance and is "an enterprise engaged in commerce" within the meaning of FLSA.  29 U.S.C. § 203(s).

27.     Defendant Innjoy Eat & Drink Incorporated is an Illinois corporation doing business as Innjoy, an eating and drinking establishment located at 2051 West Division Street in Chicago, Illinois.

28.     Upon information and belief, Defendant Innjoy Eat & Drink Incorporated generated annual gross receipts in excess of $500,000 during the last three years preceding the filing of this suit.

29.     At all relevant times, Defendant Innjoy Eat & Drink Incorporated regularly and customarily transacted business within this judicial district and is an "employer" within the meanings of FLSA, the IMWL, the IWPCA, and the Chicago Minimum Wage Ordinance and is "an enterprise engaged in commerce" within the meaning of FLSA.  29 U.S.C. § 203(s).

30.     Defendant Gabrielle Hathaway is an "employer" within the meanings of FLSA, IMWL, IWPCA, and the Chicago Minimum Wage Ordinance because at all times relevant hereto she, *inter alia*, owned a majority stake in Defendant Daddy Cool's Inc., had knowledge of Defendants' business operations and pay practices vis-à-vis both Innjoy Logan Square and Innjoy, and exercised certain supervisory functions thereover.

31.     Upon information and belief, Defendant Gabrielle Hathaway resides in and is domiciled within this judicial district.

32.     Defendant Rich Kewitz is an "employer" within the meaning of FLSA, IMWL, IWPCA, and the Chicago Minimum Wage Ordinance because at all times relevant hereto he, *inter alia*, held a substantial ownership stake in Defendant Daddy Cool's Inc., had knowledge of Defendants' business operations and pay practices vis-à-vis both Innjoy Logan Square and Innjoy, acted on behalf of same, and exercised certain supervisory functions thereover.  Moreover, Defendant Kewitz has served as the corporate President and Secretary of Defendant Daddy Cool's Inc.

33.     Further, Defendant Kewitz was involved in the day-to-day operations of Innjoy Logan Square and had the authority to hire and fire employees, the authority to direct and supervise the work of employees, signing authority for corporate checking accounts, including accounts used for payroll, and the authority to make decisions regarding wage and hour classifications, employee classifications, employee timekeeping policy and implementation, and capital expenditures.

34. Upon information and belief, Defendant Kewitz resides in and is domiciled within this judicial district.

35. Defendant Rae L. Hathaway is an "employer" within the meanings of FLSA, IMWL, IWPCA, and the Chicago Minimum Wage Ordinance because at all times relevant hereto she, *inter alia*, owned a majority stake in Defendant Innjoy Drink and Eat, Inc., had knowledge of Defendants' business operations and pay practices vis-à-vis both Innjoy Logan Square and Innjoy, acted on behalf of same, and exercised certain supervisory functions thereover. Moreover, Defendant Rae L. Hathaway has served as Defendant Innjoy Drink and Eat, Inc.'s President since at least 2017.

36. Further, Defendant Rae L. Hathaway was involved in the day-to-day operations of Innjoy and had the authority to hire and fire employees, the authority to direct and supervise the work of employees, signing authority for corporate checking accounts, including accounts used for payroll, and the authority to make decisions regarding wage and hour classifications, employee classifications, employee timekeeping policy and implementation, and capital expenditures.

37. Upon information and belief, Defendant Rae L. Hathaway resides in and is domiciled within this judicial district.

38. Defendant Joseph Hathaway is an "employer" within the meaning of FLSA, IMWL, IWPCA, and the Chicago Minimum Wage Ordinance because at all times relevant hereto he, *inter alia*, held a 4.9% ownership stake in Defendants Daddy Cool's Inc. and Innjoy Drink and Eat, Inc., had knowledge of Defendants' business operations and pay practices vis-à-vis both Innjoy Logan Square and Innjoy, acted on behalf of same, and exercised certain supervisory functions thereover. Defendant Joseph Hathaway has held himself out to his employees, the news

media, and the public at large as the *de facto* owner and general manager of Innjoy and Innjoy Logan Square.

39.     Further, Defendant Joseph Hathaway was intimately involved in the day-to-day operations of Innjoy and Innjoy Logan Square and had the authority to hire and fire employees, the authority to direct and supervise the work of employees, signing authority for corporate checking accounts, including accounts used for payroll, and the authority to make decisions regarding wage and hour classifications, employee classifications, employee timekeeping policy and implementation, and capital expenditures.

40.     Upon information and belief, Defendant Joseph Hathaway resides in and is domiciled within this judicial district.

## Count I
## Violations of Fair Labor Standards Act
## Collective Action for Unpaid Minimum Wage Resulting from Off-the-Clock Work

41.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 40 as though fully set forth herein.

42.     Plaintiffs Alvarado, Rios, and St. Angelo were employed as bartenders and servers at both of Defendants' Innjoy locations during the relevant period.

43.     As part of their employment, these Plaintiffs were often scheduled to work off-the-clock by staffing the so-called "beer tub" or "satellite bar", an auxiliary service area deployed by Defendants on busy evenings and weekends.  A conservative estimate of time worked by these Plaintiffs in connection with these "beer tub" shifts exceeds 2,000 hours.

44.     These hours worked by Plaintiffs at the "beer tub" were not included on their respective time sheets, and they were not paid any hourly wage in connection therewith.

45.    FLSA requires employers to pay employees an hourly wage of at least $7.25 for each and every hour worked.  29 U.S.C. § 206(a)(1)(C).

46.    At all relevant times, Defendants' failure to pay Plaintiffs any hourly wages whatsoever for these shifts was knowing and willful, and Plaintiffs have suffered harm as a result of this unlawful practice.

47.    Plaintiffs Alvarado, Rios, and St. Angelo and other individuals employed by Defendants as bartenders during the FLSA statutory period are similarly situated within the meaning of FLSA and are known to Defendants and are or should be identifiable in Defendants' records.

48.    Accordingly, Plaintiffs bring this collective action pursuant to FLSA to recover all unpaid regular wages earned by Plaintiffs during the FLSA statutory period, as well as liquidated damages thereon.

**Count II**
**Violations of Illinois Minimum Wage Law and Chicago Minimum Wage Ordinance**
**Class Action for Unpaid Minimum Wage Resulting from Off-the-Clock Work**

49.    Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

50.    The IMWL and CMWO require employers to pay employees a minimum wage for all hours worked.  820 ILCS 105/4, *et seq.*

51.    In the City of Chicago, the hourly minimum wage in effect during the three years immediately preceding the filing of this suit ranged from $10.50 and $13.00.

52.    At all relevant times, Defendants' failures to pay Plaintiffs any hourly wages whatsoever for the "beer tub" shifts were knowing and willful, and Plaintiffs have suffered harm as a result of this unlawful practice.

53.     An employer who violates the minimum wage provisions of the IMWL is liable to the affected employee(s) for an amount equal to three times the value of the underpayment, plus 5% of the amount of such underpayment calculated for each month following the date of underpayment, reasonable attorney's fees, and costs.  820 ILCS 105/12(a).

54.     Defendants' willful and unlawful nonpayment of hourly wages to Plaintiffs Alvarado, Rios, and St. Angelo for "beer tub" shifts has resulted in financial harm to Plaintiffs.

55.     Accordingly, Plaintiffs bring their claims for relief against all Defendants under this Count II individually and as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").  The proposed **IMWL Off-the-Clock Class** is defined as:

> **"All persons, whether currently or formerly employed by any Defendant, who performed one (1) or more hours of work as part of a "beer tub" or "satellite bar" bartending shift at Defendants' Innjoy Logan Square or Innjoy Wicker Park locations within the three (3) years preceding the date of this lawsuit, and for which such person did not receive payment of an hourly wage equal to the minimum wage then in effect in connection therewith."**

56.     This action is properly maintained as a class action under Rule 23 of the FRCP because the class is sufficiently numerous that the joinder of all class members is impracticable; there are questions of fact or law common to the class; the claims of Plaintiffs Alvarado, Rios, and St. Angelo are typical of the claims of the class; and these Named Plaintiffs will fairly and adequately represent and protect the interests of the class at large.

57.     Upon information and belief, the number of putative class is approximately 45 members. The precise number of class members may be determined from discovery and examination of the Defendants' records, particularly such records related to shift scheduling.

58.     There are questions of fact and law common to the putative IMWL Off-the-Clock class, including without limitation:

A.     Whether, and to what extent, members of the putative class, performed off-the-clock work at the behest of Defendants;

B.     Whether, and to what extent, Defendants accurately documented the hours worked by members of the putative class; and

C.     Whether, and to what extent, members of the putative class, were paid hourly wages in connection with "beer tub" shifts.

59.     The damages suffered by the putative class members arise from the same nucleus of operative facts.  Moreover, the nature of the damages described in this Count II lends itself to computing damages by way of a mathematical formula applicable to each class member.

60.     The Named Plaintiffs will fairly and adequately protect the interests of this putative class and have retained competent counsel that is extensively familiar with the factual and legal issues implicated herein.

61.     The claims asserted herein are typical of the class members they seek to represent.

62.     Upon information and belief, there are no other members of this putative class who have an interest controlling the prosecution of his or her individual claims.  Should any such individual become known, he or she may opt out of the class pursuant to Rule 23 of the FRCP.

**Count III**
**Violations of Fair Labor Standards Act**
**Plaintiff Legue's Unpaid Overtime Resulting from Misclassification**

63.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 62 as though fully set forth herein.

64.     Plaintiff Legue worked for Defendants as a bartender and server.

65.     Plaintiff Legue routinely worked in excess of 40 hours per week for Defendants but was not compensated at one and a half times their regular rate of pay for such overtime hours, in

violation of the overtime provisions of FLSA. A conservative estimate of the aggregate amount of overtime worked by Plaintiff Legue but not recorded or properly paid by Defendants exceeds 1,000 hours.

66. In an attempt to avoid their legal obligations under federal and state overtime laws, Defendants sought to classify Plaintiff Legue as an exempt employee not subject to the overtime provisions of FLSA.

67. Such designation is utterly belied by not only the actual circumstances of the job duties of Plaintiff Legue but also the Defendants' own payroll practices.

68. Notwithstanding any job titles bestowed upon them by Defendants, Plaintiff Legue did not qualify under any exemption provided under FLSA or any regulations promulgated by the Department of Labor in connection therewith.

69. Specifically, Plaintiff Legue was not compensated on a salary basis at a rate of not less than $684.00 per week; his primary duties were not managing an enterprise; he was not tasked with the regular direction of two or more full-time employees; and he was not empowered to hire or fire employees on behalf of Defendants.

70. Moreover, Defendants' own treatment of the time worked by Plaintiff Legue indicates that he was not a properly exempted salaried employee within the meaning of FLSA.

71. A review of these pay stubs reveals that, despite any designation to the contrary, his compensation each pay period was variably and wholly contingent upon how many hours he worked.

72. Accordingly, Plaintiff Legue was not subject to any exemption from the overtime provisions of FLSA and Plaintiff Legue was unlawfully deprived of his wages by Defendants' willful evasion of said provisions.

## Count IV
## Violations of Illinois Minimum Wage Law and Chicago Minimum Wage Ordinance
## Plaintiff Legue's Unpaid Overtime Resulting from Misclassification

73. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 72 as though fully set forth herein.

74. Plaintiff Legue worked for Defendants as a bartender and server.

75. Plaintiff Legue routinely worked in excess of 40 hours per week for Defendants but was not compensated at one and a half times their regular rate of pay for such overtime hours, in violation of the overtime provisions of IMWL. A conservative estimate of the aggregate amount of overtime worked by Plaintiff Legue but not recorded or properly paid by Defendants exceeds 1,000 hours.

76. In an attempt to avoid their legal obligations under federal and state overtime laws, Defendants sought to classify Plaintiff Legue as an exempt employee not subject to the overtime provisions of IMWL.

77. Such designation is utterly belied by not only the actual circumstances of the job duties of Plaintiff Legue but also the Defendants' own payroll practices.

78. Notwithstanding any job titles bestowed upon him by Defendants, Plaintiff Legue did not qualify under any exemption provided under FLSA, IMWL, or any regulations promulgated in connection therewith.

79. Specifically, Plaintiff Legue was not compensated on a salary basis at a rate of not less than $684.00 per week; his primary duties were not managing an enterprise; he was not tasked with the regular direction of two or more full-time employees; and he was not empowered to hire or fire employees on behalf of Defendants.

80.     Moreover, Defendants' own treatment of the time worked by Plaintiff Legue indicates that he was not a properly exempted salaried employee within the meaning of IMWL.

81.     A review of these pay stubs reveals that, despite any designation to the contrary, his compensation each pay period was variably and wholly contingent upon how many hours he worked.

82.     Accordingly, Plaintiff Legue was not subject to any exemption from the overtime provisions of IMWL and Plaintiff Legue was unlawfully deprived of his wages by Defendants' willful evasion of said provisions.

**Count V**
**Violations of Fair Labor Standards Act**
**Plaintiff McElheny's Unpaid Overtime Resulting from Misclassification**

83.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 82 as though fully set forth herein.

84.     Plaintiff McElheny worked for Defendants as a bartender and server.

85.     Plaintiff McElheny routinely worked in excess of 40 hours per week for Defendants but was not compensated at one and a half times their regular rate of pay for such overtime hours, in violation of the overtime provisions of FLSA.  A conservative estimate of the aggregate amount of overtime worked by Plaintiff McElheny but not recorded or properly paid by Defendants exceeds 1,000 hours.

86.     In an attempt to avoid their legal obligations under federal and state overtime laws, Defendants sought to classify Plaintiff McElheny as an exempt employee not subject to the overtime provisions of FLSA.

87.      Such designation is utterly belied by not only the actual circumstances of the job duties of Plaintiff McElheny but also the Defendants' own payroll practices.

14

88.     Notwithstanding any job titles bestowed upon him by Defendants, Plaintiff McElheny did not qualify under any exemption provided under FLSA, IMWL, or any regulations promulgated in connection therewith.

89.     Specifically, Plaintiff McElheny was not compensated on a salary basis at a rate of not less than $684.00 per week; his primary duties were not managing an enterprise; he was not tasked with the regular direction of two or more full-time employees; and he was not empowered to hire or fire employees on behalf of Defendants.

90.     Moreover, Defendants' own treatment of the time worked by Plaintiff McElheny indicates that he was not a properly exempted salaried employee within the meaning of FLSA.

91.     A review of these pay stubs reveals that, despite any designation to the contrary, his compensation each pay period was variably and wholly contingent upon how many hours he worked.

92.     Accordingly, Plaintiff McElheny was not subject to any exemption from the overtime provisions of FLSA and Plaintiff McElheny was unlawfully deprived of his wages by Defendants' willful evasion of said provisions.

### Count VI
### Violations of Illinois Minimum Wage Law and Chicago Minimum Wage Ordinance
### Plaintiff McElheny's Unpaid Overtime Resulting from Misclassification

93.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 92 as though fully set forth herein.

94.     Plaintiff McElheny worked for Defendants as a bartender and server.

95.     Plaintiff McElheny routinely worked in excess of 40 hours per week for Defendants but was not compensated at one and a half times their regular rate of pay for such overtime hours, in violation of the overtime provisions of IMWL.  A conservative estimate of the aggregate amount

of overtime worked by Plaintiff McElheny but not recorded or properly paid by Defendants exceeds 1,000 hours.

96.     In an attempt to avoid their legal obligations under federal and state overtime laws, Defendants sought to classify Plaintiff McElheny as an exempt employee not subject to the overtime provisions of IMWL.

97.      Such designation is utterly belied by not only the actual circumstances of the job duties of Plaintiff McElheny but also the Defendants' own payroll practices.

98.     Notwithstanding any job titles bestowed upon him by Defendants, Plaintiff McElheny did not qualify under any exemption provided under FLSA, IMWL, or any regulations promulgated in connection therewith.

99.     Specifically, Plaintiff McElheny was not compensated on a salary basis at a rate of not less than $684.00 per week; his primary duties were not managing an enterprise; he was not tasked with the regular direction of two or more full-time employees; and he was not empowered to hire or fire employees on behalf of Defendants.

100.     Moreover, Defendants' own treatment of the time worked by Plaintiff McElheny indicates that he was not a properly exempted salaried employee within the meaning of IMWL.

101.     A review of these pay stubs reveals that, despite any designation to the contrary, his compensation each pay period was variably and wholly contingent upon how many hours he worked.

102.     Accordingly, Plaintiff McElheny was not subject to any exemption from the overtime provisions of IMWL and Plaintiff McElheny was unlawfully deprived of his wages by Defendants' willful evasion of said provisions.

### Count VII
### Violations of Fair Labor Standards Act
### Collective Action for Unpaid Overtime for Kitchen Staff

103.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 102 as though fully set forth herein.

104.     Plaintiff Lopez worked for Defendants as a cook.

105.     Like much of the kitchen staff employed by Defendants, Plaintiff Lopez routinely worked in excess of 40 hours per week for Defendants but was not compensated at one and a half times their regular rate of pay for such overtime hours, in violation of the overtime provisions of FLSA.  A conservative estimate of the aggregate amount of overtime worked by Plaintiff Lopez but not recorded or properly paid by Defendants exceeds 1,200 hours.

106.     Instead of properly designating as overtime the time worked by Plaintiff Lopez each workweek that exceeded of 40 hours per week, Defendants elected to simply refuse to document these overtime hours attributable to Plaintiff Lopez.  These hours were instead paid at Plaintiff Lopez's regular rate of pay in the form of a separate cash payment.

107.     The scheme described above to evade the obligations imposed by FLSA vis-à-vis overtime was not an accident but rather a component of a premeditated, willful, and continuous policy imposed by Defendants in or110.der to unlawfully reduce its labor costs irrespective of the dictates of federal law.

108.     This illegal treatment of overtime was not limited to Plaintiff Lopez but rather was part of Defendants' regular course of conduct with Innjoy kitchen staff.

109.     FLSA requires employers to pay each non-exempt employee at a rate of at least one and a half times such employee's regular rate of pay for all hours in excess of 40 for a given workweek.  29 U.S.C. § 207(a)(2)(C).

110.     At all relevant times, Defendants' failure to properly pay Plaintiff Lopez the full overtime wages to which he was lawfully entitled was knowing and willful, and Plaintiff Lopez has suffered harm as a result of this unlawful practice.

111.     Plaintiff Lopez and other individuals employed by Defendants as kitchen staff who worked for more than 40 hours in any given workweek during the FLSA statutory period are similarly situated within the meaning of FLSA and are known to Defendants and are or should be identifiable in Defendants' records.

112.     Accordingly, Plaintiffs bring this collective action pursuant to FLSA to recover all unpaid overtime wages earned by Plaintiffs during the FLSA statutory period, as well as liquidated damages thereon.

### Count VIII
### Violations of Illinois Minimum Wage Law and Chicago Minimum Wage Ordinance
### Class Action for Unpaid Overtime for Kitchen Staff

113.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 112 as though fully set forth herein.

114.     The IMWL requires employers to pay employees not less than one and a half times his or her regular rate of pay for any hours worked in excess of 40 hours in a given workweek. 820 ILCS 105/4a.

115.     At all relevant times, Defendants' failure to pay Plaintiffs at the legally prescribed overtime rate was knowing and willful, and Plaintiffs have suffered harm as a result of this unlawful practice.

116.     An employer who violates the overtime provisions of the IMWL is liable to the affected employee(s) for an amount equal to three times the value of the underpayment, plus 5%

of the amount of such underpayment calculated for each month following the date of underpayment, reasonable attorney's fees, and costs. 820 ILCS 105/12(a).

117.    Defendants' willful and unlawful nonpayment of overtime wages has resulted in financial harm to Plaintiff Lopez.

118.    Accordingly, Plaintiff Lopez brings this claim for relief against all Defendants under this Count VIII individually and as a class pursuant to Rule 23 of the FRCP. The proposed **IMWL Overtime Class** is defined as:

> **"All persons, whether currently or formerly employed by any Defendant, who in any given workweek performed more than forty (40) hours of work as part of the kitchen staff Defendants' Innjoy Logan Square or Innjoy Wicker Park locations within the three (3) years preceding the date of this lawsuit,, and for which such person did not receive payment for such hours in excess of 40 hours at a rate equal to at least one and a half times his or her regular rate of pay."**

119.    This action is properly maintained as a class action under Rule 23 of the FRCP because the class is sufficiently numerous that the joinder of all class members is impracticable; there are questions of fact or law common to the class; the claims of Lopez are typical of the claims of the class; and this Named Plaintiff will fairly and adequately represent and protect the interests of the class at large.

120.    Upon information and belief, the number of putative class is approximately 25 members. The precise number of class members may be determined from discovery and examination of the Defendants' records, particularly such records related to shift scheduling.

121.    There are questions of fact and law common to the putative IMWL Overtime Class, including without limitation:

    A.    Whether, and to what extent, members of the putative class worked in excess of 40 hours for the benefit of Defendants;

B.      Whether, and to what extent, Defendants accurately documented all such hours worked by members of the putative class; and

C.      Whether, and to what extent, members of the putative class were paid by Defendants at the overtime rate then in effect in connection with all hours in excess of 40 in any workweek;

122.    The damages suffered by the putative class members arise from the same nucleus of operative facts.  Moreover, the nature of the damages described in this Count VIII lends itself to computing damages by way of a mathematical formula applicable to each class member.

123.    Plaintiff Lopez will fairly and adequately protect the interests of this putative class and has retained competent counsel that is extensively familiar with the factual and legal issues implicated herein.

124.    The claims asserted herein are typical of the class members he seeks to represent.

125.    Upon information and belief, there are no other members of this putative class who have an interest controlling the prosecution of his or her individual claims.  Should any such individual become known, he or she may opt out of the class pursuant to Rule 23 of the FRCP.

**<u>Count IX</u>**
**<u>Violations of the Illinois Wage Payment and Collection Act</u>**
**<u>Class Action for Unauthorized Pay Deductions</u>**

126.    Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 125 as though fully set forth herein.

127.    Plaintiffs Alvarado, Legue, McElheny, Rios, and St. Angelo ("Tipped Employee Plaintiffs") routinely earned tips from Innjoy's clientele.  A substantial portion of these tips were processed through credit card transactions.

128. By agreement, these tips were to then be disbursed by Defendants to the individuals who earned them in the form of cash or check.

129. At all times relevant to this lawsuit, Defendants would routinely deduct from or withhold full disbursement of these tips to Tipped Employee Plaintiffs to defray alleged cash drawer shortages or other discrepancies arising out of Defendants' bookkeeping and cash management practices.

130. These pay deductions were not made with the Tipped Employee Plaintiffs' consent or authorization.

131. Plaintiffs Alvarado, Legue, McElheny, Rios, and St. Angelo are entitled to the protections of the IWPCA.

132. Defendants are employers required to pay these Tipped Employee Plaintiffs in accordance with the terms of the IWPCA.

133. The IWPCA provides that, except under limited circumstances not applicable to this case, unauthorized deductions by employers from wages or final compensation are prohibited.

134. Defendant violated the IWPCA by subjecting the Tipped Employee Plaintiffs to the type of wage deductions referenced in paragraph 129, *supra*.

135. An employer who violates the IWPCA is liable to the affected employee(s) for an amount of the underpayment, plus 2% of the amount of such underpayment calculated for each month following the date of underpayment, reasonable attorney's fees, and costs.

136. Accordingly, Plaintiffs Alvarado, Legue, McElheny, Rios, and St. Angelo bring this claim for relief against all Defendants under this Count IX each individually and as a class pursuant to Rule 23 of the FRCP. The proposed **IWPCA Unauthorized Deduction Class** is defined as:

**"All persons, whether currently or formerly employed by any Defendant, who earned one or more tips at any time within the last ten (10) withheld by Defendants, such tips having been subsequently withheld by Defendants without express written authorization or otherwise in violation of the IWPCA."**

137.    This action is properly maintained as a class action under Rule 23 of the FRCP because the class is sufficiently numerous that the joinder of all class members is impracticable; there are questions of fact or law common to the class; the claims of the Tipped Employee Plaintiffs are typical of the claims of the class; and this Tipped Employee Plaintiffs will fairly and adequately represent and protect the interests of the class at large.

138.    Upon information and belief, the number of putative class is in excess of 100 members. The precise number of class members may be determined from discovery and examination of the Defendants' records, particularly such records related to shift scheduling.

139.    There are questions of fact and law common to the putative IWPCA Unauthorized Deduction Class including without limitation:

        A.    Whether, and to what extent, tips and other compensation earned by members of the putative class was withheld by Defendants;

        B.    Whether, and to what extent, such withholdings from employee pay constitute a deduction within the meaning of the IWPCA; and

        C.    Whether, and to what extent, such withholdings from employee pay were unauthorized within the meaning of the IWPCA.

140.    The damages suffered by the putative class members arise from the same nucleus of operative facts.  Moreover, the nature of the damages described in this Count IX lends itself to computing damages by way of a mathematical formula applicable to each class member.

22

141.     The Tipped Employee Plaintiffs will fairly and adequately protect the interests of this putative class and has retained competent counsel that is extensively familiar with the factual and legal issues implicated herein.

142.     The claims asserted herein are typical of the class members they seek to represent.

143.     Upon information and belief, there are no other members of this putative class who have an interest controlling the prosecution of his or her individual claims.  Should any such individual become known, he or she may opt out of the class pursuant to Rule 23 of the FRCP.

<u>**Count X**</u>
<u>**Defamation *Per Se* as against Defendant Joseph Hathaway**</u>

144.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 143 as though fully set forth herein.

145.     On or around April 15, 2019, Defendant Joe Hathaway made one or more false and injurious statements to a group of persons including one Manny Gonzalez, the substance of which included the statement that Plaintiff McElheny was "a coke dealer."

146.     On or around May 1, 2019, Defendant Joe Hathaway made one or more false and injurious statements to Plaintiff Legue, the substance of which included the statement that Plaintiff was engaged in the sale of illegal drugs including cocaine.

147.     These statements by Defendant Joseph Hathaway were without a factual basis and Defendant Joseph Hathaway uttered them without regard to their falsity.

148.     These statements by Defendant Joseph Hathaway falsely, intentionally, and maliciously portrayed Plaintiff McElheny as having committed multiple crimes and were therefore defamatory per se.

149. As a direct and proximate result of Defendant Joseph Hathaway's conduct described in this Count X, Plaintiff McElheny suffered substantial damage, including but not limited to personal humiliation, reputational debasement, and mental anguish.

### Jury Demand

150. Plaintiffs, by and through their undersigned counsel, demand a trial by jury on all claims so triable.

### Prayer for Relief

WHEREFORE, Plaintiffs Alvarado, Legue, Lopez, McElheny, Rios, and St. Angelo, by and through their counsel, LAW OFFICE OF RICHARD J. ZITO LLC, now demand judgment against Defendants, jointly and severally, and in favor of Plaintiffs individually and for all others similarly situated, known and unknown, for a sum that will adequately and completely compensate Plaintiffs for the extent and duration of their sustained damages, the cost of maintaining this action, and respectfully request this Court as follows:

A. Certify classes pursuant to Counts II, VIII, and IX of the Complaint and appoint the Law Office of Richard J. Zito LLC as class counsel therefor;

B. Order Defendants to file with this Court and/or furnish to Plaintiffs' counsel a list of all names, addresses, and telephone numbers of all persons who worked for Defendants in the capacity of bartender or as kitchen/cooking staff at any time in the three years preceding the filing of this lawsuit;

C. Authorize Plaintiffs' counsel to issue notice at the earliest possible time to all current and former bartenders and current and former kitchen personnel employed by Defendants at any time in the three years preceding the filing of this lawsuit, informing them that this lawsuit

has been filed, describing briefly the nature of the suit, and notifying them of their right to opt-in pursuant to FLSA as to Counts I and VII;

D.     Find and declare that Defendants willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.;

E.     Find and declare that Defendants willfully violated the Illinois Minimum Wage Law, 820 ILCS 105, *et seq*.;

F.     Find and declare that Defendants willfully violated the Chicago Minimum Wage Ordinance;

G.     Find and declare that Defendant Joseph Hathaway is liable for defamation *per se* as to Plaintiff McElheny;

H.     Award compensatory damages, including all regular and overtime pay owed Plaintiffs, in an amount to be determined at trial;

I.     Award liquidated damages in connection with all amounts due, accruing from the date such amounts were lawfully due Plaintiffs as required by FLSA.

J.     Award treble damages, plus 5% interest per month on all regular and overtime pay due Plaintiffs, accruing from the date such amounts were lawfully due, as required by IMWL;

K.     Award compensatory damages, plus 2% interest per month on all underpayments due Plaintiffs, accruing from the date such amounts were lawfully due, as required by IWPCA.

L.     Award all costs and reasonable attorney's fees incurred in the prosecution of this action;

M.     Grant leave to add additional plaintiffs by motion, the filing of consent forms, or such other method directed or approved by the Court; and

N.     For such further relief as the Court deems equitable and just.

Dated:  December 26, 2019                     Respectfully submitted,

                                By:    /s/    ***Richard J. Zito, Esq.***
                                Richard J. Zito, Esq. (ARDC No. 6291139)
                                LAW OFFICE OF RICHARD J. ZITO LLC
                                Attorney for Plaintiffs
                                200 East Randolph Drive, Ste. 5100
                                Chicago, Illinois 60601
                                (312) 883-5298
                                rich@zitolawchicago.com